IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-01458-PSF-OES

CLARK S. SPALSBURY, JR.,

Plaintiff(s),

vs.

CYNTHIA SISSON, et al.;

Defendant(s).

---

1.  RECOMMENDATION FOR DISMISSAL WITHOUT PREJUDICE
OF REMAINING CLAIMS AND PARTIES,
2.  RECOMMENDATION FOR SANCTIONS AGAINST PLAINTIFF, AND
3.  ORDER DENYING ALL REMAINING MOTIONS AS MOOT

---

ORDER ENTERED BY MAGISTRATE JUDGE O. EDWARD SCHLATTER
Dated:  February 1, 2006

### INTRODUCTION AND SUMMARY OF RECOMMENDATION

**1**

Plaintiff has filed on July 11, 2005, a "Dismissal Request as Directed by Magistrate."  Doc. 120.  In this dismissal request, plaintiff asks the court to dismiss his remaining claims against the remaining parties "without prejudice."  Although plaintiff himself did not mention the authority under which he was seeking to dismiss the remaining claims, I conclude that he is attempting to proceed pursuant to Rule 41. Fed.R.Civ.P. 41.

Plaintiff's alleged request for dismissal is ambiguous at best.  Plaintiff states in regard to each of his claims, "Spalsbury requests dismissal of these claims as directed

by the Magistrate without prejudice after the July 11, 2005, deadline." Id. However, simultaneously with this language, plaintiff states that he is "filing his objection to the Magistrate's order requiring Spalsbury to dismiss those claims and to the Magistrate's conclusions." *See* id. at ¶ 3; *see also* Pltf's Objection, Doc. 121. As a result, plaintiff's request for dismissal is presented in conjunction with a notice from him that he had filed with District Judge Phillip S. Figa an appeal, or objection, in regard to my alleged "orders" to dismiss his case.

Defendants observed that plaintiff was attempting to overturn my alleged orders to dismiss his claims. In effect, plaintiff had notified all parties and the court that he was attempting to preserve his right to proceed on his claims here, and had presented an objection to Judge Figa to accomplish that goal. In light of that effort by plaintiff, defendants filed their motions to dismiss in which they addressed the merits of plaintiff's claims against them. *See* Judicial Defts' Mtn Dism, Doc. 125, July, 28, 2005; Sisson Mtn to Dism, Doc. 128, Aug. 1, 2005. Rather than merely clarifying that he was confessing a dismissal of his claims, plaintiff instead filed responses to the motions, and persisted in his arguments with regard to the merits of his claims.

**Summary of Recommendation.** I will recommend that plaintiff's motion for dismissal without prejudice be granted. As I explain below, I informed plaintiff on March 7, 2005, that his claims appeared to be frivolous, and that he had failed to show a basis for this court to have jurisdiction over his claims. I warned him again during a status conference that I conducted on July 1, 2005, that he faced sanctions for the continued

prosecution of his claims.  Only after that status conference, and only after this case had been litigated for a year, did plaintiff file his so-called request for dismissal.

However, Rule 41(a)(2) states that "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper."  Plaintiff has needlessly and vexatiously caused the remaining defendants to incur fees and costs in this court from the date that he filed this action, and for that reason I will recommend that he be ordered to pay all of the attorney fees and costs that they have incurred in their efforts to defend against plaintiff's prosecution of his claims.

As I discuss below, plaintiff should be ordered to pay fees and costs for several reasons.  One, the court has the discretion under Rule 41(a)(2) to award attorney fees to defendants, and in the circumstances of this case the court should award attorney fees to the remaining defendants.  *See* Aerotech, Inc. v. Estes, 110 F.3d 1523, 1528 (10th Cir. 1997) ("When a plaintiff dismisses an action without prejudice, a district court may seek to reimburse the defendant for his attorneys' fees because he faces a risk that the plaintiff will refile the suit and impose duplicative expenses upon him.").  Two, plaintiff filed this action for vexatious reasons, and the court has the inherent power to assess attorney fees when a party has acted vexatiously, wantonly, in bad faith or for oppressive reasons.  *See* Shields v. Shetler, 120 F.R.D. 123, 126 (D.Colo. 1988), *quoting* Alyeska Pipeline Serv. Co. v. Wilderness Society, 421 U.S. 240, 258-59 (1975).  Three, plaintiff is a lawyer.  The filing and continued prosecution of his claims against the remaining defendants violated the provisions of Rule 11.  Fed.R.Civ.P. 11.

3

## 2.  Procedural background.

Plaintiff filed a complaint in this matter on July 16, 2004, as the result of his arrest and incarceration on charges that resulted from an alleged domestic disturbance between himself and his ex-wife, Cynthia Sisson.  Plaintiff named as defendants the Estes Park police officers who investigated the domestic dispute and arrested him, the Larimer County Sheriff who held him in custody, Ms. Sisson, and, collectively, the judicial defendants, which consists of the judges, magistrate and judicial clerk in the Larimer County court system.

The underlying domestic dispute arose out of an argument between plaintiff and Ms. Sisson over the terms of plaintiff's visitation rights with his son.  The argument occurred at plaintiff's automobile, which he had parked in front of Ms. Sisson's home in order to return the couple's son from plaintiff's visitation with him.  During the argument, Ms. Sisson allegedly refused to close the car door and allow plaintiff to leave.  The argument escalated into relatively minor pushing and shoving, and plaintiff telephoned the police.  Plaintiff, and not Ms. Sisson, was arrested and jailed.

On March 7, 2005, I issued a Recommendation for partial dismissal of claims.  Doc. 74.  In my Recommendation, I described in detail the events that gave rise to police involvement in the disturbance between plaintiff and Ms. Sisson, and I recommended that District Judge Phillip S. Figa grant the motions to dismiss that had been filed by the Estes Park police officers and by the Larimer County Sheriff.  I concluded that plaintiff had failed to state claims against these two sets of defendants because plaintiff's own descriptions of the events that surrounded his fight with Ms.

4

Sisson reflected that the Estes Park police had probable cause to arrest him, and because the Office of the Sheriff was not obligated to investigate or second-guess the reasons that he had been placed in the custody of the Sheriff by the police.  My Recommendation was approved and adopted by Judge Figa on April 21, 2005 (Doc. 88).

Pursuant to my Recommendation of March 7, 2005 (Doc. 74), District Judge Phillip S. Figa entered an order on April 21, 2005, that granted the motions to dismiss that had been filed by the Estes Park police and the Larimer County Sheriff.  Doc. 88. That left Ms. Sisson and the judicial defendants as the remaining parties.

Simultaneously with the issuance of my Recommendation of March 7, 2005, for the dismissal of the Estes Park and Larimer County defendants, I entered an order that would permit plaintiff to file a third amended complaint.  Doc. 75.  However, in that order, I expressly advised plaintiff that his claims against Ms. Sisson and the judicial defendants were likely to be considered baseless or frivolous by this court.  I pointed out to plaintiff that his Third and Tenth claims for relief, which were alleged against Ms. Sisson, were baseless because he had failed to allege any federal claim against her. His only claims against Sisson consisted of state law torts for false imprisonment, second degree criminal tampering, second degree criminal trespass, harassment, domestic violence, trespass to chattels, damage to personalty, outrageous conduct, and assault and battery.  I advised plaintiff that his suit was brought in this court pursuant to 42 U.S.C. § 1983, and in order to state a basis for this court to have jurisdiction over Ms. Sisson, plaintiff was required to allege and prove that Sisson was

5

a state actor.  The allegations of plaintiff's Complaint reflected that any effort to prove such a proposition was completely futile.

I also discussed in detail in my Order the futility of plaintiff's claims against the judicial defendants.  Directing plaintiff to various case citations, I pointed out that all of the judicial defendants were absolutely immune from any suits for damages, and to the extent that plaintiff was seeking injunctive relief against these defendants, I informed him that his efforts appeared clearly to be barred by the jurisdictional prohibitions that are contained in the  Younger and Rooker-Feldman doctrines.  Younger v. Harris, 401 U.S. 37 (1971); Rooker v. Fid. Trust Co., 263 U.S. 413 (1923); Dist of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); see also Johnson v. DeGrandy, 512 U.S. 997, 1005-06 (1994) (holding that the Rooker-Feldman doctrine bars "a party losing in state court. . . from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights").

Plaintiff ignored the warnings contained in my order of March 7, 2005, and filed a Third Amended Complaint ("TAC") on June 13, 2005, in which he asserted the same or similar claims against Ms. Sisson and the judicial defendants.  Doc. 107.  Plaintiff also made it a point, somewhat petulantly, to re-allege all of his claims against the Estes Park police and the Larimer County Sheriff, although simultaneously acknowledging in the body of his claims that they had previously been dismissed by the court.

In his TAC, plaintiff re-alleged four claims for relief.  He asserted one claim each against Ms. Sisson and the judicial parties, and he alleged for the first time two claims against the Governor of the State of Colorado.

In his Third Claim for Relief, plaintiff stated that he was persisting in his claim against Ms. Sisson for what he termed "pendent or supplemental state law claims."  Id. at 20, ¶ 151.  Plaintiff did not otherwise identify what he meant by the "pendent or supplemental state law claims," but merely stated that "[n]one of those claims were intended to be § 1983 claims nor is § 1983 cited anywhere therein."  Id.  Plaintiff thereupon announced that he "hereby dismisses any portion of the Third Claim for Relief which raises a § 1983 claim or which is based on the assertion that Sisson is a 'state actor.'"  Id., emphasis in original.  Plaintiff did not, however, state that he was dismissing Ms. Sisson from the lawsuit, and he indicated instead that he was persisting in his "supplemental state law claims."

In his Seventh Claim for Relief, plaintiff re-alleged his claim against the judicial defendants for their collective refusal to "properly process" the criminal complaint against Ms. Sisson that plaintiff had prepared and tendered to the Clerk of the Larimer County Court, Sherlyn Sampson.  Plaintiff insists that he has a right, independently of any prosecutor, to file his own criminal complaint against Ms. Sissonl, and he is angry because the district attorney will not accept his complaint for filing, and the judicial authorities will not allow him to do so on his own.  Against the judges and magistrate plaintiff sought only declaratory and injunctive relief in regard to their refusal to receive

and process his complaint.  Id. at 24. Against the Clerk, plaintiff sought both injunctive

relief and monetary damages.  Id.

In his Tenth Claim for Relief, plaintiff sued the Governor of the State of

Colorado.  In this claim, he asked this court to declare the victims' rights statute

unconstitutional.  See Colo.Rev.Stat. § 24-4.1-101 et seq..  In plaintiff's view, certain

provisions of the statute prevented him "from obtaining the benefits of Colorado's

victims' rights and restitution statutes by unequal, arbitrary, and capricious refusal of

the courts to act on his criminal case filing and the refusal of the District Attorney to

prosecute Sisson."  TAC at 26, ¶ 182.

In his Eleventh Claim for Relief, plaintiff named the Governor again.  He asked in

this claim for this court to declare unconstitutional the statute in Colorado which directs

a court to enter a "mandatory protection order" against any party who is charged with a

crime, in particular, with a crime involving domestic violence.  See Colo.Rev.Stat. § 18-

1-1001.  Plaintiff asked for this statute to be declared unconstitutional because, in his

view, "it permits infringement of fundamental constitutional rights such as parenting

without providing for an immediate post-deprivation hearing."  And, plaintiff continued,

"in Spalsbury's case, he was effectively deprived of all visitation with his son" for

approximately two months during the year 2003.  See TAC at 27, ¶ 192 & "wherefore

clause."

After plaintiff filed his TAC, I conducted a status conference with plaintiff and all

counsel present on July 1, 2005.  I again discussed with plaintiff the frivolous nature of

his claims, and expressly pointed out to him that he had failed to establish any basis for

this court to have jurisdiction over the claims that he was asserting.  During the hearing,

I again encouraged plaintiff to reconsider the prosecution of his claims, and warned him

yet again that he could face sanctions if his claims were found to be baseless or

frivolous.

On July 11, 2005, plaintiff filed his "Dismissal Request as Directed by

Magistrate" in which plaintiff attempts both to obtain a dismissal of his claims "without

prejudice," while simultaneously filing an objection with Judge Figa in which plaintiff

seeks to retain his claims on this docket.  The record contains abundant evidence that I

never "ordered" or "directed" plaintiff to dismiss his claims against the remaining

defendants.  Indeed, in rejecting plaintiff's objection to my alleged "order" of July 1,

2005, Judge Figa noted that "a review of the Courtroom Minutes (Dkt #116), the Minute

Order (Dkt #117), and the recorded transcript of the proceeding does not reflect an

order mandating dismissal or directing plaintiff to dismiss his claims." Doc. 164.

Rather, as the record would show, I merely provided plaintiff with the legal authorities

that would cause his claims to be dismissed at some eventual stage of the

proceedings, probably as baseless or frivolous, whether he liked it or not, along with

the admonishment that he should dismiss them himself, on his own motion.

### 3.  Attorney fees under Rule 41(a)(2).

In fact, plaintiff has now filed a document that purports to be a motion for

dismissal without prejudice, and, under the law, if this court lacks jurisdiction he is

entitled to such a dismissal.  *See, e.g.,* Albert v. Smith's Food & Drug Ctrs., Inc., 356

F.3d 1242, 1249 (10th Cir. 2004) (holding that a dismissal for lack of jurisdiction must be

a dismissal without prejudice); <u>Martinez v. Richardson</u>, 472 F.2d 1121, 1126 (10th Cir. 1973) ("It is fundamental. . . that a dismissal for lack of jurisdiction is not an adjudication of the merits and therefore . . . must be without prejudice.").  Indeed, in asking the court at this time to dismiss without prejudice, plaintiff is simply acknowledging at this late date what I have been telling him almost since the inception of his case, that his claims against these remaining defendants are baseless because he failed to show any basis for this court's jurisdiction over Ms. Sisson as a party, or over the subject matter of the claims asserted against the judicial defendants.

Although plaintiff is entitled to his dismissal without prejudice, in the circumstances presented here, these defendants are entitled to an award of their attorney fees and costs.  Plaintiff has expressly stated that he wishes to have his claims dismissed without prejudice in order that he may re-file and pursue them in state court. *See, e.g.,* Pltf's Resp. to Sisson Mtn Dism. at 4 (Doc. 149) ("Spalsbury requested dismissal of claims against Sisson for lack of jurisdiction so they could be pursued in state court.").  This is precisely the type of circumstances for which an award of fees is appropriate under Rule 41(a)(2).

This case was filed over one year ago.  Since that date, these defendants have been required to hire attorneys, respond to various motions, appear for hearings or status conferences, and, after the filing by plaintiff of his Third Amended Complaint, have been required to respond to the jurisdictional bases and merits of plaintiff's claims in this lawsuit.  Only after the passage of a year, and only after explicit warnings from this court on two occasions, has plaintiff finally filed his contradictory motion to dismiss.

10

Despite the fact that the parties have been put to great expenditures of time, effort and expense, plaintiff has informed them that he intends to follow his dismissal without prejudice with a renewal of this case in state court.

The Tenth Circuit has noted that "when a plaintiff dismisses an action with prejudice, attorneys' fees are usually not a proper condition of dismissal because the defendant cannot be made to defend again."  Aerotech, Inc. v. Estes, 110 F.3d at 1528, and cases cited at n 1.  Here, plaintiff has affirmatively stated that he intends to renew his claims in state court.  He may do so following an order dismissing his claims without prejudice, but the tradeoff for a dismissal without prejudice is that he must compensate these defendants for the attorney fees and costs that he has caused them to suffer in what plaintiff now admits to be a fruitless, aborted and futile federal lawsuit.

### 4.  Sanctions for plaintiff's vexatious motives.

Even if plaintiff were not seeking to dismiss his claims, I would be submitting a recommendation to Judge Figa that recommends a dismissal without prejudice for the reasons I have provided all along, this court lacks jurisdiction, either over the remaining parties, or over the subject matter of certain of the claims.  However, even with such a recommendation for jurisdictional reasons, I would simultaneously be recommending that defendants be awarded their attorneys fees in this case, because plaintiff initiated and prosecuted the claims against the remaining defendants in bad faith and for vexatious reasons.

A reading of the totality of the allegations and arguments throughout plaintiff's pleadings reflects that his suit has been motivated by his one, primary goal, that is, his

desire to punish Ms. Sisson for her apparent success in the couple's divorce

proceedings, and for her success in regard to the immediate events that gave rise to

this case, that is, the arrest and incarceration of plaintiff out of a domestic dispute that

plaintiff views as Ms. Sisson's fault.  Plaintiff himself implicitly admits his vexatious

motives when he states::

> Spalsbury lost his license to practice law, his income, his
> child, and his liberty, all as a consequence of the crimes
> committed against him by his former spouse Sisson.  For
> this she should pay an extremely heavy price but has yet to
> do so.

*See* Pltf's Reply to Defts' Obj'n at 1, Doc. 147, filed Sept. 26, 2005.  As I discuss below,

plaintiff has grossly misrepresented to the court the reason that he lost his law license,

because, in fact, he lost it for failure to pay child support.

Although this court cannot and will not resolve the merits of plaintiff's claims

against his ex-wife, the court can certainly take notice of the fact that his claims against

her are patently absurd.  According to allegations made by plaintiff in his complaint, he

and Ms. Sisson had a heated argument in front of Ms. Sisson's house, in and around

plaintiff's automobile, over a visitation problem, and the argument escalated into

relatively minor pushing and shoving.  Plaintiff called the police, and, unfortunately for

plaintiff, in domestic disputes the police were virtually required by the Colorado statutes

to arrest someone when parties reported that physical contacts had occurred.  The

police chose to believe that plaintiff was the principal offender, and he was arrested.

Ms. Sisson was not.

For being a part of the domestic argument, Ms. Sisson now finds herself charged in these federal proceedings with false imprisonment, second degree criminal tampering, second degree criminal trespass, harassment, domestic violence, trespass to chattels, damage to personalty, outrageous conduct, and assault and battery.  In the context of an ordinary domestic dispute over visitation, in which no one was hurt, plaintiff's claims are outrageously ridiculous.  According to his complaint, Ms. Sisson held the car door open "so [plaintiff] could not close his driver side car door against the rain or move his car."  TAC at ¶ 73.  Apparently, for allowing rain on the upholstery, plaintiff has brought a federal lawsuit against Ms. Sisson with claims that include trespass to chattels and damage to personalty.  Spare me.  His vexatious and vindictive motives are patent on the face of the claims themselves.

The documents filed by plaintiff are replete with other examples of his vexatious or retaliatory motives, but his vindictive motives are nowhere more apparent than in the fact that he is at this time seeking to obtain a dismissal of this case without prejudice precisely so that he may continue in state court to pursue his quest to punish Ms. Sisson.  Whatever other issues the couple had during their marriage, plaintiff's present lawsuit is limited to the events surrounding the argument between his and his wife that occurred at his automobile almost three years ago, that is, on July 18, 2003.  This man shows no intention of stopping.

Plaintiff's vexatious motives are also manifested in the fact that on two occasions he filed appeals with the Colorado Court of Appeals in regard to the decisions that were made in his divorce case by the Larimer County judges and magistrate.  *See* In re the

Marriage of Cynthia S. Spalsbury and Clark Stanley Spalsbury, Jr., 2004 WL 440933

(Colo.App. 2004); In re the Marriage of Cynthia Spalsbury and Claqrk S. Spalsbury,

2005 WL 3006564 (Colo.App. 2005).  Plaintiff knows that appeals to a higher court are

within his knowledge and abilities as a lawyer, and cost him nothing.  He undoubtedly

also knows that his appeals impose special burdens, including potential attorney fees,

upon Ms. Sisson.  In both cases that plaintiff appealed, the Court of Appeals issued

two-word opinions: "Orders Affirmed."  Regardless of the perfunctory nature of these

approvals of the trial court's orders, Ms. Sisson nevertheless was required to respond

to the appeals, or, at the very least,  was required to sweat it out while awaiting

decisions from the appellate body.

Arguably, the decisions of the police, and the decisions of the judicial

defendants in the divorce proceedings, are not actions or events for which Ms. Sisson

can be blamed.  What other people decide or choose to do is not within her control.

However, through his ongoing lawsuits and appeals, plaintiff seeks to hold Ms. Sisson

blameworthy for such actions or decisions of others, and he has been relentless and

unceasing in his pursuit of punishment for her.

Plaintiff's claims against the judicial defendants obviously are motivated by the

same goal, to punish Ms. Sisson.  One of plaintiff's claims against the judicial

defendants asks this court to order them to accept for filing and processing a criminal

complaint against Ms. Sisson that plaintiff himself prepared and tendered.  *See* TAC at

22, ¶ ¶ 155 *et seq.*  Because the Larimer County Court would not allow plaintiff himself

to initiate a criminal case against Ms. Sisson, he has filed this action seeking to

14

overturn that decision.  In plaintiff's Tenth Claim for Relief, he has sued the Governor because, in plaintiff's view, any law that prevents him from initiating a criminal case against his wife must be unconstitutional.  *See* TAC at 25, ¶¶ 174 *et seq.*  Despite the absurdity of the claim, plaintiff apparently thinks that he ought to be able to put Ms. Sisson in jail without any interference from any court or official, and he will not rest until he has accomplished that end.

In a case involving actions by a party similar to those of plaintiff, the Colorado Court of Appeals affirmed an order of a trial court that awarded attorney fees as the result of what the trial court considered to be "a disturbing example of truly vexatious litigation clearly warranting the imposition of fees. . . ."  Mitchell v., Ryder, 104 P.3d 316, 321 (Colo.App. 2004).  In Mitchell, the trial court found that the plaintiff's "substantial, and perhaps sole, motivation for bringing and maintaining this lawsuit was a vindictive and vituperative effort to continue to inflict damage on [a party] which she coupled with a corresponding willingness to inflict damage on anyone else who got in her way."  Id.  In such circumstances, the Court of Appeals held, an award of attorney fees was within the discretion of the court.  Id.

The United States Supreme Court has acknowledged that the inherent power of the courts includes the power to assess attorney's fees when a party has acted in bad faith, vexatiously or for oppressive reasons.  Alyeska Pipeline Serv. Co. v. Wilderness Society, 421 U.S. at 258-59.  All three of those factors are present here.  Plaintiff has brought this action not because he was injured or suffered losses for which Ms. Sisson should be held responsible, but because he desires to punish and oppress her for her

actions during the domestic argument and for her success in obtaining favorable judicial rulings from the Larimer County judges and magistrate.

The Supreme court has also observed that "it is within the inherent power of a federal court to assess attorney's fees against an attorney who has acted unreasonably, vexatiously, or in bad faith in connection with litigation in a manner that constitutes abuse of the judicial process." Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980).  Plaintiff's lawsuit has represented a monumental waste of time for this court, as evidenced by the several orders and recommendations that I have been caused to enter, and the hearings and status conferences that included proceedings to again advise and warn plaintiff with regard to the frivolous nature of his claims.  See Morris v. Adam-Millis Corp., 758 F.2d 1352, 1357 n. 7 (10th Cir. 1985) ("it is well established that courts have inherent power to impose a variety of sanctions on both litigants and attorneys to regulate their dockets, promote judicial efficiency and deter frivolous filings.").

Even if plaintiff's bad faith was not egregious enough to satisfy the test for vexatious litigation, his conduct is sanctionable as a violation of 28 U.S.C. § 1927, which provides:

> Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The Tenth Circuit has held that "[s]ubjective bad faith is not necessary to trigger sanctions under § 1927.  See Braley v. Campbell, 832 F.2d 1504, 1512 (10th Cir. 1987)

16

(en banc).  In <u>Braley</u>, the Court ruled that excess costs, expenses and attorney fees are imposable against an attorney personally under § 1927 for conduct that "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court."  Section 1927 permits a court to insist that the attorney bear the costs of his own lack of care.  <u>Id</u>. at 1511; *see also* <u>Steffens v. Steffens</u>, 221 F.3d 1353 (10th Cir. 2000) (unpublished), 2000 WL 702390 at **5 (attorney ordered to pay attorney fees pursuant to § 1927 for continuing to prosecute a federal litigation after discovery revealed a lack of any evidence to support the § 1983 claims).

The evidence demonstrates overwhelmingly that plaintiff has proceeded in this case for vexatious and vengeful reasons.  However, whether plaintiff proceeded in bad faith or not, his actions have multiplied the proceedings in an objectively unreasonable manner, and he should be made to compensate the remaining defendants for the burdens imposed upon them in defending claims for which plaintiff never had any jurisdictional basis in this court.

## 5.  Sanctions for violation of Rule 11.

Plaintiff seeks to avoid the consequences of his actions in filing this suit, in part, by arguing that he is not a lawyer, and that he and his pleadings should be accorded the deference that is given to persons who have no legal education.  *See*  Pltf's Reply to Defts' Obj'n at 1, Doc. 147 at 1.  I disagree with plaintiff.  He *is* a lawyer, although his license has been temporarily suspended.  However, because he is a lawyer, his

pleadings should be held to the same standards that are applied to lawyers, meaning, he should be subject to sanctions for violations of Rule 11 the same as any lawyer would.

As noted above, plaintiff admits that he *was* a lawyer, but he claims that "he lost his license to practice law. . . as a consequence of the crimes committed against him by his former spouse Sisson." However, according to the order of suspension that was entered against plaintiff by the Colorado Supreme Court, this is simply not true, which is a kind way of saying that plaintiff's remark is a flat lie to the court, and he knows it. *See* People v. Spalsbury, 111 P.3d 1052 (Colo. 2005). Plaintiff's license to practice was suspended for one year because he failed or refused to pay child support, and at the time of the suspension proceedings he owed $10,000 to Ms. Sisson in back support. Id. at 1053. The order of suspension became effective on May 12, 2005, which was almost one year after plaintiff had filed this lawsuit.

The order of suspension states that plaintiff was eligible at any time to petition for reinstatement upon a showing by him that he either had paid the amount that was due, or had negotiated a repayment plan with the state district court. Id. at 1057. And even if he never fulfilled either of these requirements, the order of suspension is effective for a period of one year only, or until May 12, 2006, after which plaintiff becomes eligible to apply for reinstatement. Presumably, his petition will be received favorably if he is able to show that he has made a good faith effort to work out a plan with the district court for the payment of his support obligation.

18

Plaintiff has been a lawyer for 25 years, having been admitted to the practice of law in 1981. Id. at 1054. The order of suspension notes that during the several years preceding his suspension, he was employed as a deputy district attorney for two different judicial districts. Id. at 1054. Given these circumstances, plaintiff simply cannot, in good faith, claim that his pleadings should be viewed in the same liberal manner that would be accorded to a person who has never even attended law school. Plaintiff's license was not suspended for incompetence or criminal convictions. It merely was suspended because of his failure or refusal to pay child support, presumably as a part of plaintiff's ongoing vendetta against his wife and family. As noted by the Supreme Court, "[w]illful failure to pay court-ordered child support is serious professional misconduct, which ordinarily warrants a period of suspension from the practice of law." Id. at 1055, *citing and quoting* People v. Primavera, 904 P.2d 883, 885 (Colo. 1995), internal quotations omitted. Indeed, every lawyer in this state is aware that payment of the annual licensing fee in Colorado is accompanied by a form that requires every lawyer to state and affirm whether he or she is in default with regard to the payment of any child support.

Plaintiff argues here that he lost his license because of the crimes committed against him by Ms. Sisson. Not only does the order of suspension demolish that contention, the order notes that plaintiff voluntarily left his employments as a deputy district attorney with two different districts, and voluntarily engaged in the altercation with Ms. Sisson that resulted in his arrest. Id. In the view of the Supreme Court, plaintiff's actions were selfish, and resulted in egregious harm to Ms. Sisson and the

couple's child, while Ms. Sisson was completely blameless.  Id. at 1056.  The Court

observed that plaintiff failed to appear at the Sanctions Hearing, and failed to

cooperate with any of the proceedings, leading the Court to conclude that plaintiff

refused to acknowledge the wrongfulness of his conduct.  Id.

In short, plaintiff is educated in the law, and has practiced as an attorney for 25

years.  He is not entitled to a liberal interpretation of his pleadings merely because he

failed to make his child support payments.

Because plaintiff is a lawyer, he knew, or he reasonably should have known,

from the very commencement of this case that he lacked any factual or legal basis for

this court to have jurisdiction either over his ex-wife or the judicial defendants.  Under

Rule 11, plaintiff had an obligation as an attorney to conduct a reasonable investigation

into the facts that he believed would support his claims, and into the laws that he

believed would provide him with a legal basis for seeking relief from the court.

Fed.R.Civ.P. 11.  However, *even if plaintiff was not a lawyer*, as a *pro se* party he has

the same obligations under Rule 11 that lawyers have. Business Guides, Inc. v.

Chromatic Communications Enter., Inc., 498 U.S. 533, 544-45 (1991) (explaining that

Rule 11 applies both to parties who are represented by counsel and to *pro se* parties

as well); Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1540 (10th Cir.

1996) (same); Eisenberg v. University of N.M., 936 F.2d 1131, 1134 (10th Cir. 1991)

(same).  Under the provisions of Rule 11, when a lawyer or party signs a pleading, the

signature of that party serves as a certification that the party has conducted a

reasonable inquiry into the facts and the law before the pleading was filed.  The

signature also serves as a certification that the investigation into the facts and law have provided the party with *both* facts *and* law that will support the claim that is being made. Id.

*Pro se* parties are entitled to have their pleadings reviewed with some measure of liberal deference accorded to their status as *pro se* parties.  However, this liberal deference "does not confer a license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets."  In re Winslow, 132 B.R. 1016, 1019 (Bankr.D.Colo. 1991) (internal citations and quotation marks omitted).

The focus of Rule 11 is narrow.  "It relates to the time of signing of a document and imposes an affirmative duty on each attorney and each party, represented or *pro se*, to conduct a reasonable inquiry into the validity and accuracy of a document before it is signed."  Eisenberg v. University of New Mexico, 936 F.2d at 1134.  Even though *pro se* litigants may not have the training and resources of an attorney, they nevertheless must comply with Rule 11 and make a reasonable inquiry as to whether a complaint is well-grounded in fact and warranted by existing law.  *See* Fed.R.Civ.P. 11(b); *see also* Danvers v. Danvers, 959 F.2d 601, 604-05 (6th Cir. 1992).

Rule 11 requires parties (or their attorneys, for those who have them) to conduct a reasonable investigation into the facts that they believe will support their claims, and into the laws that they believe will provide them with a legal basis for seeking relief from the court.  If the court finds that a lawyer or *pro se* party has signed a pleading in violation of Rule 11, the court "may. . . impose an appropriate sanction" upon that party."  Fed.R.Civ.P. 11(c).

As a lawyer, or even as a party, plaintiff was required to make a reasonable inquiry into the facts that would provide a jurisdictional basis for the filing of this case in the federal court.  Plaintiff not only unreasonably failed to make such an inquiry, but when confronted with warnings from me, beginning on March 7, 2005, he disputed the court's reasoning and persisted for several months in the prosecution of claims for which he had been warned that he had no basis for jurisdiction in the federal court.  And, although I am not recommending that plaintiff's claims be dismissed as baseless and frivolous *as such*, as a lawyer, plaintiff knew, or he reasonably should have known, that the claims that he was attempting against these defendants, in fact, are baseless and frivolous.  Warnings to that effect also were provided to plaintiff by me on two occasions.

If a party wishes to obtain sanctions pursuant to Rule 11, they are required to first provide to the offending party a "safe harbor" period of 21 days.  Fed.R.Civ.P. 11(c)(1)(A).  The purpose of that "safe harbor" is to provide an opportunity to the miscreant to withdraw the pleading that offends the provisions and purposes of Rule 11.  However "the 'safe harbor' provision does not apply when a court imposes sanctions on its own initiative."  Laurino v. Tate, 220 F.3d 1213, 1219 (10th Cir. 2000), *citing* Hutchinson v. Pfeil, 108 F.3d 11809, 1184 (10th Cir. 2000).  A *sua sponte* award of sanctions requires the issuance of a show cause order, with reasonable opportunity to respond.  Fed.R.Civ.P. 11(c)(1)(B); Laurino, 220 F.3d at 1219.

My Order of March 7, 2005, stands as a warning, the same as if it had been formally announced as a "safe harbor" warning under Rule 11.  Plaintiff was on notice

from the court itself that he had filed a lawsuit with claims that lacked any jurisdictional basis, or that were frivolous, and was expressly warned that he could face sanctions in the form of attorney fees and costs if he persisted in his claims.  Plaintiff did not heed the warning until after he was issued a *second* warning by me on July 1, 2005.

In filing this action, plaintiff certified that he had conducted a reasonable inquiry into the facts and the law before he made the decision to file, and certified that his investigation had revealed the existence of both facts and law that provided a basis for the filing of the suit.  In fact, a reasonable inquiry by plaintiff would have revealed that the federal court would have no jurisdiction over Ms. Sisson because she was not a state actor, and a similar inquiry would have revealed that the federal court does not involve itself in divorce disputes that are pending in state court.

The half-baked nature of plaintiff's pursuit of relief against the judicial defendants in federal court is apparent in his Response to their Motion to Dismiss.  *See* Doc. 148, Oct. 11, 2005.  The judicial defendants argued in their motion that plaintiff should have exhausted his claims against the judicial defendants by filing a proceeding under Rule 106, Colo.R.Civ.P., or by taking his complaints to the Colorado Supreme Court by means of a petition for mandamus, for example.  Plaintiff responded by arguing that such avenues would have been futile because upon the filing of a Rule 106 action, "it would have been routed to the Chief Judge for assignment and he would have simply affirmed his actions."  Pltf's Resp., Doc. 148, at 3.

In regard to mandamus, plaintiff argued,  "the Colorado Supreme Court rarely accepts such cases and most filings are dismissed without any resolution on the merits

even when the petitioner's claims are correct or not." Id. In plaintiff's view, since the

state trial court and the Supreme Court possessed the discretion to ignore any petition

for relief he might file, he in turn could ignore those bodies and come directly to federal

court.  One wonders how plaintiff could conclude that the state courts would have

discretion to reject his claims against the judicial officers, but that the federal courts

would not, and would be required to hear them.  Even a modest amount of legal

research by a lawyer on this subject would lead to a discussion of the Younger case,

one of the primary doctrines taught as part of any course on federal jurisdiction in the

law schools.  Why plaintiff concluded that the federal court would be stuck with his

claims, while the state courts are not, remains a mystery.

## SUMMARY OF RECOMMENDATIONS

Plaintiff has moved the court for a dismissal of his claims without prejudice,

confessing that he has no facts to support the jurisdiction of the federal court over

either Ms. Sisson or the judicial defendants.  I have construed his motion as a motion to

dismiss pursuant to Rule 41.  Plaintiff is entitled to have his claims dismissed "without

prejudice" because, as plaintiff has been told since March 7, 2005, plaintiff never was

able to present any facts that would demonstrate that this court had jurisdiction over the

remaining defendants and/or the subject matter of the claims alleged against them.

Rule 41(a)(2) provides that defendants are entitled to be compensated for their

attorney fees if a plaintiff dismisses his claims against them, and the dismissal is

"without prejudice," instead of "with prejudice."  As noted, an award of attorney fees to

the defendants that remain in this suit is particularly appropriate because plaintiff has

informed the court and parties that after the dismissal of his claims here, he intends to re-file them in state court.  Aerotech, Inc. v. Estes, 110 F.3d at 1528.

Even if Rule 41(a)(2) was not applicable here, defendants would still be entitled to be awarded their attorney fees in this case because the evidence demonstrates that (a) plaintiff has filed this lawsuit against Ms. Sisson and the judicial defendants for vexatious and vengeful reasons; (b) plaintiff has multiplied the proceedings in violation of 28 U.S.C. § 1927; and (c) plaintiff violated his duties as either a lawyer or party under  Rule 11, and had been warned by the court that he had filed and was persisting in the prosecution of claims for which he had no jurisdictional basis, and/or were frivolous.

## COMMENTS TO PLAINTIFF

Plaintiff should review and reconsider his needs to continually file and pursue lawsuits as a means to control his family and the circumstances that surround his obviously strained relationship with his ex-wife.  Plaintiff runs the risk that one day he may awake and find that his long pursuit for justice on his terms has brought him nothing except economic loss and harm to his relationship with his family.

Plaintiff should ponder the life history of a lawyer by the name of Edward Ronwin, who brought so many frivolous and vexatious actions against others that he was eventually referred by bar authorities or judges for mental evaluations, and denied admissions to practice or suspended upon showings of mental problems.  *See* Application of Ronwin, 555 P.2d 315 (Ariz. 1976) (plaintiff's application for admission to the Arizona bar denied on a showing that he suffered from an established personality

disorder that "causes him to be unreasonably suspicious that bad motives and intentions activate persons with whom he comes into contact, and to unreasonably imagine that he is the object of unfair persecution"); <u>Matter of Ronwin</u>, 680 P.2d 107 (Ariz. 1983) (application again denied upon a showing of his continued filing of unwarranted, vexatious and harassing actions, his use of intemperate, provocatory language and epithets, his exhibition of a lack of control, restraint and civility, and his vilification of those who opposed him); <u>Iowa Supreme Court Board of Professional Ethics and Conduct v. Ronwin</u>, 557 N.W.2d 515 (Iowa 1996) (affirming suspension of license for one year for maintenance of frivolous lawsuits and appeals, unwarranted accusations against judges and opposing counsel).

For example, some persistent litigants have been diagnosed with "paranoid personality disorder," or PPD, *DSM-IV* Axis II.  One source states, "Those litigants with these *DSM-IV* Axis II diagnoses have long standing, psychological difficulties, often exhibit self-defeating strategies of living, feel chronically victimized, suffer from fragile self-esteem, and consistently externalize blame and responsibility for difficulties that befall them, even when they have instigated the very conditions by which they feel victimized."  Mark Levy, M.D.,  "Shrink in the Courtroom: Forensic Psychiatry and Law, *San Francisco Attorney Magazine*, Dec. 2000-Jan.2001.  A "Google" of the phrase "paranoid personality disorder" yields numerous other sources and discussions, many of which appear to describe the picture that is presented by plaintiff in this case.

Plaintiff here at one point was an attorney, gainfully employed, married, and living with his wife and  children.  He is now suspended from practice, unemployed or

inadequately employed, divorced, the subject of restrictions on his visitation, in debt $10,000 for child support, and, if Judge Figa approves this recommendation, he is about to be further in debt for legal fees.  The entire record of this case, which consists primarily of pleadings or documents filed by plaintiff, reflects that he has all the earmarks of someone who feels chronically victimized, blames others for all of the ills that have beset him, refuses to take responsibility for his own failings, and has fallen into a self-defeating strategy of living.

Plaintiff would do well to take notice of his downward spiral, seek counseling and take measures to halt his self-defeating strategy of litigating every perceived slight, injury or loss.  This vendetta against Ms. Sisson and the judges who have passed, *and will continue to pass*, judgment upon the issues between plaintiff and Ms. Sisson will bring plaintiff nothing but further grief and economic loss.  If plaintiff truly believes that he has a case against them, he should take his case (including the recommendations and orders that have been entered here) to a lawyer who can evaluate plaintiff's claims with independence and objectivity, two qualities of which plaintiff is lacking for this matter.  I recognize that plaintiff may lack the funds to do this, but advice from an independent lawyer would be a better investment than plaintiff's pursuit of the claims that he has alleged in this case.

## RECOMMENDATIONS AND ORDERS

### A

I therefore **RECOMMEND** AS FOLLOWS:

1.  that plaintiff's "Dismissal Request as Directed by Magistrate" [Doc. 120, filed

July 11, 2005], which I have construed as a motion for dismissal pursuant to Fed.R.Civ.P. 41, be GRANTED, and that all of the remaining claims and parties be DISMISSED WITH PREJUDICE;

2.  that plaintiff be ordered to pay all of the attorney fees and costs that have been incurred by the remaining defendants, namely, Cynthia Sisson and the judicial defendants, in their defense against the claims that have been initiated in this court by plaintiff;

3.  that the Motion to Dismiss filed by defendants Schultz, Hiatt, Schapanski and Sampson (i.e., the judicial defendants) [Doc. 125, filed July 28, 2005] be DENIED AS MOOT; and

4.  that the *two* motions to dismiss filed by Cynthia Sisson [Doc. 103, filed June 8, 2005, and Doc. 128, filed July 29, 2005] be DENIED AS MOOT.

## B

It is hereby **ORDERED that all remaining motions are DENIED AS MOOT**, including the following: (a) plaintiff's Motion for Extension of Time to File Response [Doc. 113, filed June 29, 2005]; (b) plaintiff's Motion to Stay re Order [Doc. 119, filed July 8, 2005]; (c) plaintiff's Motion to Stay re Order [Doc. 122, filed July 11, 2005]; plaintiff's Motion for Extension of Time to File Response/Reply [Doc. 165, filed

November 21, 2005]; and plaintiff's Motion for Extension of Time for Enlargement [Doc.

166, filed November 22, 2005].

Dated at Denver, Colorado, on February 1, 2006.

BY THE COURT:


_s/O. Edward Schlatter_____
O. Edward Schlatter
United States Magistrate Judge